Rachamin ANATIAN, Atik LLC, Charles Gundy LLC, Chesed LLC, Kaballa LLC, Keter LLC, Mamash LLC and Van Harper LLC, Plaintiffs–Appellants,

v.

COUTTS BANK (SWITZERLAND) LTD., formerly known as Coutts & Co. AG, Defendant–Appellee.

Mordechai Gal–Oliver and Margaret Gal–Oliver, Plaintiffs–Appellants,

v.

Coutts Bank (Switzerland) Ltd., formerly known as Coutts & Co. AG, Defendant–Appellee.

Docket Nos. 98–9269, 98–9270

United States Court of Appeals, Second Circuit.

Argued: April 28, 1999
Decided: Sept. 20, 1999

Barbara L. Lipshutz, Jacobs, Debrauwere & Dehn, LLP, New York, NY, for Plaintiffs–Appellants.

Philip H. Schaeffer, White & Case LLP, New York, NY, for Defendants–Appellees.

Before: WALKER and POOLER, Circuit Judges and MOTLEY, District Judge *.

POOLER, Circuit Judge:

Rachamin Anatian, seven limited liability companies he controls, Mordechai Gal–Oliver and Margaret Gal–Oliver ("plaintiffs") appeal from the memorandum order and judgment of the United States District Court for the Southern District of New

---

* The Honorable Constance Baker Motley, Senior United States District Judge of the Southern District of New York, sitting by designation.

York (Rakoff, *J.*) dismissing their securities fraud and RICO allegations. We conclude that plaintiffs failed to state a claim for fraud in connection with the sale or transfer of a security and failed to allege a RICO "enterprise" in connection with the section 1962(c) claims sufficiently distinct from the RICO "person." In addition, we find that plaintiffs failed to plead fraud with the particularity required by Fed. R.Civ.P. 9(b). Therefore, we affirm the judgment of the district court.

## BACKGROUND

In reviewing the dismissal of a complaint, we must accept as true the facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor. *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 43 (2d Cir.1997). The facts, unless otherwise noted, are as plaintiffs allege. In 1995, Rachamin Anatian became a client of Coutts Bank. He borrowed over $3.7 million from Coutts, secured by his shares of stock in USA Detergents. In the spring and summer of 1995, Anatian founded and became principal shareholder of a home shopping network known as Global Shopping Network, Inc. ("GSN"), and its successor Global Broadcasting Systems, Inc. ("GBS"). Anatian recruited Mordechai Gal–Oliver, an Israeli television personality, to be Chief Operating Officer of GSN.

· Plaintiffs claim that between 1995 and 1997 Coutts representatives fraudulently induced Anatian to borrow $100 million from Coutts to purchase TV stations and supply the private equity element for the initial public offering of GSN. Coutts representatives also persuaded Anatian to create seven limited liability companies to which the bank could loan money for Anatian's benefit, while circumventing the internal and legal per-borrower lending limits. Coutts representatives assured Anatian that this arrangement would satisfy internal lending regulations and that the New York office had the authority to make such loans without approval of any

other Coutts office. The Gal–Olivers also claim that Coutts representatives convinced them to borrow $2 million, half of which was retained in a Coutts certificate of deposit, and half of which was used by the Gal–Olivers to buy GSN stock and a home in Brooklyn.

Anatian pledged his stock in USA Detergents as collateral for his personal loan and arranged for the limited liability companies to pledge GSN stock as collateral. Plaintiffs claim that Coutts falsely inflated the value of the GSN stock pledged as collateral for the loans in order to extend more credit to them. After extending millions of dollars in loans to Anatian, the related limited liability companies, and associates, the Coutts representatives allegedly reneged on their loan commitment, claiming that the Coutts home office put a halt to the arrangement. Without further credit, there could be no public offering, and GSN declared bankruptcy.

In August and October of 1997, Coutts sued Anatian, the limited liability companies, and the Gal–Olivers in two related state court actions for defaulting on more than $40 million in loan obligations. *See Anatian et al. v. Coutts Bank*, Nos. 97 CIV. 9280(JSR), 97 CIV. 9492(JSR), 1998 WL 526440, at *1 (S.D.N.Y. Aug. 21, 1998). Shortly thereafter, plaintiffs commenced these actions in federal court alleging, among other things, violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and the civil provisions of the RICO statute, 18 U.S.C. § 1961 et seq. Defendants moved pursuant to Fed.R.Civ.P. 12 to dismiss or stay the federal actions. On August 21, 1998, the district court dismissed plaintiffs' federal claims and declined to exercise jurisdiction over the remaining state claims, in light of the pending action in New York Supreme Court. *See Anatian*, 1998 WL 526440, at *4.

## DISCUSSION

■ We review *de novo* the district court's dismissal of a complaint pursuant

to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, accepting as true the factual allegations of the complaint. , *See Chill v. General Elec.*, 101 F.3d 263, 267 (2d Cir.1996). The dismissal will be upheld only if "plaintiff can prove no set of facts upon which relief may be granted." *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994). Furthermore, when a plaintiff alleges securities fraud, we must also consider the complaint in light of Fed. R.Civ.P. 9(b), which requires plaintiffs to plead fraud with particularity. *See id.* The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 1128 (internal citations omitted).

▆▆▆ Appellants argue that the district court erred in dismissing their securities fraud claim because Coutts' misrepresentations regarding the loan commitment were made in connection with the purchase or sale of securities. We agree with the district court that plaintiffs failed to state a claim for securities fraud and failed to plead fraud with particularity.

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

*Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984). Even if plaintiffs' allegations were true, the purported misrepresentations as to the authority of the Coutts representatives to loan money in excess of the bank's lending requirements and the failure to carry out the loan commitment do not pertain to the purchase or sale of a security. The district court properly rejected plaintiffs' attempt "to transform what are in essence breach of contract claims or breach of fiduciary duty claims only tangentially involving securities into securities fraud claims." *Anatian*, 1998 WL 526440, at *2. Plaintiffs' claim that Coutts deceived them by inflating the value of GSN stock in order to extend them more credit falls short of the mark. It is not sufficient to allege fraud in a transaction in which a security is a part. *See Chemical Bank*, 726 F.2d at 943. Therefore, we affirm the dismissal of the securities fraud claim.

▆▆ In addition, we find that Judge Rakoff properly dismissed both the securities fraud and RICO claims for failure to plead fraud with particularity. Alleging that Coutts Bank made a sizeable loan with knowledge that it could not be repaid does not give rise to an inference of fraud. Nor were the RICO predicate acts of mail and wire fraud alleged with sufficient particularity. Even if we were to find that the time and content of those communications met the Rule 9(b) standard, plaintiffs' claim must be dismissed because they failed to allege how those statements were fraudulent.

▆▆▆ Appellants also argue that the district court erred in dismissing their RICO claims. They claim the New York office of Coutts Bank engaged in a business practice of attempting to circumvent internal and legal lending limits and extending credit without authority to do so. To state a RICO claim, a plaintiff must plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In addition, a plaintiff must plead injury to business or property as a result of the RICO violation. *See id; accord* 18 U.S.C. § 1964(c).

▆▆ We affirm the dismissal of the RICO claims for the reasons set forth by the district court. In addition to the Rule 9(b) infirmities, we agree with the district court that plaintiffs failed to allege an "enterprise" sufficiently distinct from the RICO "person" with respect to the claims

based on section 1962(c). "[A] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Bennett v. U.S. Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985). Plaintiffs alleged that Coutts was an "enterprise" within the meaning of sections 1961 and 1962 as well as a "person" as defined in section 1961(3). Plaintiffs cannot circumvent the distinctness requirement "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994).

■ Finally we note that the district court was not obliged to grant plaintiffs leave to amend their complaint. While we recognize that leave to amend should be freely granted, especially in the case of a Rule 9(b) dismissal, *see Chill,* 101 F.3d at 271, we will not "deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought." *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655, 664–65 n. 3 (2d Cir.1997) (quoting *Shields v. Citytrust Bancorp., Inc.* 25 F.3d at 1132). Here, plaintiffs made no attempt to seek leave to amend their amended complaint either before or after the district court's decision. Nor was there any showing as to how plaintiffs might amend their complaint to cure their pleading deficiencies, especially in light of the insufficiency of facts to support a claim. Therefore, we reject plaintiffs' claim that the district court erred in not granting leave to amend. We have considered appellants' remaining contentions and find them to be without merit.

### CONCLUSION

For the foregoing reasons we affirm the decision of the district court.