14-1056-cv
*D. Penguin Brothers Ltd. v. City National Bank*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of October, two thousand fourteen.

PRESENT:

> BARRINGTON D. PARKER,
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
>
> > *Circuit Judges.*

———————————————————————————

D. PENGUIN BROTHERS LTD., H.T.A. EQUITIES, INC., AMBASSADOR INVESTORS GROUP, INC., RED, WHITE & BLUE PROPERTIES INC., CFH ASSOCIATES, INC., 64 GREEN STREET LLC, BDLAK EQUITIES, INC., SHPITZ EQUITIES INC., 2000 HOMES INC., PETE JACOV, AVRAHAM GLATTMAN, MAZAL 57, LLC, BEACH 96TH STREET LLC, FIVE FIVE'S PROPERTIES, INC.,

> *Plaintiffs-Appellants*,

v.

No. 14-1056-cv

CITY NATIONAL BANK, NBUF DEVELOPMENT LTD., BLACK UNITED FUND OF NEW YORK, INC., FIRST PRO GROUP, INC., INNER CITY STRATEGIES, JAMES ROBERT WILLIAMS, A/K/A J. ROBERT WILLIAMS, A/K/A BOB WILLIAMS, DAVID SPIEGELMAN, ESQ.,

*Defendants-Appellees,*

THE CITY OF NEW YORK,

*Defendant.*[*]

---

**FOR PLAINTIFFS-APPELLANTS:** DAVID GORDON, Gordon & Haffner, LLP, Harrison, NY.

**FOR DEFENDANT-APPELLEE CITY NATIONAL BANK:** JOHN B. WEBB (Rachel A. Postman, *on the brief*), Reed Smith LLP, New York, NY.

**FOR DEFENDANTS-APPELLEES NBUF DEVELOPMENT LTD., BLACK UNITED FUND OF NEW YORK, INC., FIRST PRO GROUP, INC., INNER CITY STRATEGIES, AND JAMES ROBERT WILLIAMS:** CHARLES E. DORKEY III (John W. Lomas, Jr., *on the brief*), McKenna Long & Aldridge LLP, New York, NY and Washington, DC.

Appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiffs-Appellants are two real estate developers, Pete Jacov and Avraham Glattman, and multiple corporations and limited liability companies co-owned by them (collectively, "plaintiffs"). Plaintiffs allege that defendants David Spiegelman—their former attorney—and James Williams defrauded them by inducing their investment of approximately six million dollars in touted real estate projects that, as time revealed, were fictitious. After plaintiffs deposited their "investment" funds for these projects in escrow

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

accounts maintained by Spiegelman, Spiegelman and Williams allegedly stole the deposited money through a series of inter- and intra-bank transfers.

Plaintiffs brought suit, pleading state-law claims for fraud, conversion, and breach of fiduciary duty, as well as federal-law claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* In their substantive claims under § 1962(c) of the RICO statute, plaintiffs named as defendants Spiegelman; Williams; City National Bank ("CNB"), in which one of the escrow accounts was maintained; and Inner City Strategies ("ICS"), an organization allegedly founded in part by Williams and that was the designated payee on many of Spiegelman's escrow account withdrawals. Plaintiffs also brought RICO conspiracy claims under § 1962(d), naming all defendants but the City of New York (collectively, the "RICO defendants").[1]

The RICO defendants moved to dismiss the complaints,[2] arguing under Federal Rule of Civil Procedure 12(b)(6) that plaintiffs failed to state a claim for which relief can be granted, and that plaintiffs failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). In a judgment entered on March 14, 2014, the District Court granted the motion to dismiss with prejudice and without granting plaintiffs an opportunity to amend. It also declined to exercise supplemental jurisdiction over the pendent state-law claims.

On appeal, plaintiffs argue primarily: (1) that the District Court erred by requiring all elements of a RICO claim to be pleaded in conformity with Rule 9(b); (2) that, under the

---

[1] With respect to the City of New York, plaintiffs merely sought injunctive relief: they asked the court, on the basis of the alleged fraud, to direct the City to deliver the deeds for twenty-nine buildings that plaintiffs had allegedly acquired in a purchase facilitated by Spiegelman and Williams. Early in the litigation, the parties jointly stipulated to dismiss the City from the case, with prejudice.

[2] On January 2, 2013, Jacov, Glattman, and all but three of the corporate plaintiffs filed a complaint in the United States District Court for the Southern District of New York. *D. Penguin Brothers Ltd. v. City National Bank*, No. 13-cv-41-TPG. On January 31, 2013, the remaining three plaintiffs—two limited liability companies and a dissolved corporation, all co-owned by Jacov and Glattman—filed a separate complaint in the same court making nearly identical allegations. *Mazal 57, LLC v. City National Bank*, No. 13-cv-706-TPG. On February 25, 2013, the two suits were consolidated in front of Judge Griesa under the docket number assigned to the first-filed suit. We need not distinguish further between the complaints for purposes of this Order.

3

more liberal pleading standard of Federal Rule of Civil Procedure 8(a), their complaints adequately state both substantive and conspiracy claims under RICO; and (3) that the District Court abused its discretion in failing to grant their request to amend. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision to affirm.

## A. *Plaintiffs' RICO Claims*

We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff[s'] favor." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 210 (2d Cir. 2012) (internal quotation marks omitted).

To state a claim under 18 U.S.C. § 1962(c), one of RICO's substantive provisions, a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote call omitted). The second element—an "enterprise"—includes, pursuant to the statute, "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In their complaints, plaintiffs allege two "enterprises." The first is the National Black United Fund ("NBUF"), a not-for-profit corporation with a registered principal place of business in New York, of which Williams was a director. The second is not a legal entity, but rather an alleged "association in fact" consisting of all the named RICO defendants. The alleged purpose of both "enterprises" was to perpetrate the fraud described in the complaints and then to channel the stolen funds to political actors and causes favorable to NBUF. *See* Joint App'x at 37 (Compl. ¶¶ 25–26). For the reasons set forth below, we conclude that plaintiffs have not plausibly pleaded a RICO claim under § 1962(c) or § 1962(d).

### 1. *Pleading Standard for RICO Enterprise Allegations*

In evaluating the RICO defendants' motion to dismiss, the District Court stated that "all elements of a RICO claim must satisfy the heightened pleading requirement set forth in

4

Rule 9(b), which requires a plaintiff to 'state with particularity the circumstances constituting fraud or mistake.'" *D. Penguin Brothers Ltd. v. City National Bank*, Nos. 13 Civ. 0041(TPG), 13 Civ. 0706(TPG), 2014 WL 982859, at *3 (S.D.N.Y. Mar. 11, 2014) (quoting Fed. R. Civ. P. 9(b)). In this, the District Court erred. The heightened pleading requirements of Rule 9(b) "appl[y] only to claims of fraud or mistake." *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992). In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b); for other elements of a RICO claim—such as non-fraud predicate acts or, as relevant here, the existence of an "enterprise"—a plaintiff's complaint need satisfy only the "short and plain statement" standard of Rule 8(a). *See id.* (applying Rule 8(a) when extortion alleged as a RICO predicate act); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) (evaluating non-fraud elements of a RICO conspiracy allegation under Rule 8(a) rather than Rule 9(b)).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must offer "more than labels and conclusions" in pleading the non-fraud elements of a RICO claim under Rule 8(a). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, plaintiffs' RICO claims fail to satisfy even the more liberal pleading standards of Rule 8(a).

### 2. *Plaintiffs' Proffered RICO Enterprises*
#### a. **NBUF**

As a threshold matter, we acknowledge that, consistent with RICO's "remedial purposes," *United States v. Boyle*, 556 U.S. 938, 944 (2009) (internal quotation marks omitted), "any legal entity may qualify as a RICO enterprise," *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). Thus, by alleging that NBUF was a not-for-profit corporation, plaintiffs adequately alleged that it was an "enterprise" within the meaning of RICO, and the District Court erred in holding that "plaintiffs fail to state a RICO claim

5

because they do not plead any facts which indicate the existence of an enterprise." *D. Penguin Brothers*, 2014 WL 982859 at *4. But a complaint does not state a RICO claim merely by alleging racketeering activity and denominating a legal entity a "RICO enterprise." A RICO violation requires a specific relationship between the enterprise and the pattern of racketeering: under § 1962(c), that the enterprise's affairs be conducted "through" the pattern of racketeering. In other words, a plaintiff must also plausibly allege "that a nexus exist[s] between the enterprise and the racketeering activity that is being conducted." *First Capital*, 385 F.3d at 174.

On appeal, plaintiffs contend that their identification of NBUF as a RICO enterprise saved the complaints' RICO counts from dismissal. They argue that NBUF qualifies as an enterprise under the definition provided by § 1961(4)—which establishes that a "corporation" may be a RICO enterprise—and that nothing more is needed. This argument is unavailing because it ignores the nexus requirement. Here, plaintiffs' complaints inadequately allege that the RICO defendants engaged in racketeering activity through NBUF or leveraged the NBUF corporate structure to perpetrate the fraud. The complaints fail to allege, for example, that Williams used NBUF to accomplish any of the predicate acts alleged or that NBUF actually received any of the funds allegedly stolen by Spiegelman and Williams. Rather, plaintiffs merely assert that, because he was Chairman of NBUF's Board of Directors and the Director of Strategic Development, Williams could invoke the NBUF name to induce plaintiffs to invest in the bogus real estate ventures. But Williams's high-ranking position in NBUF and his misleading statements do not in and of themselves create an adequate nexus between NBUF and the alleged racketeering activity. And plaintiffs' overarching assertion on information and belief that the RICO defendants aimed to use the fraudulently obtained funds to benefit NBUF by funneling those funds to particular political campaigns is "wholly conclusory" and thus also inadequate to fulfill the nexus requirement. *Twombly*, 550 U.S. at 561. We conclude, therefore, that plaintiffs have not plausibly alleged the required nexus between NBUF and the alleged theft by Spiegelman and Williams. Accordingly, plaintiffs' RICO claims cannot be based on the NBUF enterprise.

### b. Association-in-Fact Enterprise

Plaintiffs also claim that an "association in fact" existed among the RICO defendants and that this association constituted a RICO enterprise. An association-in-fact enterprise "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Boyle*, 556 U.S. at 945 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). This type of RICO enterprise "must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. The enterprise must also exist "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. "'[F]or an association of individuals to constitute an enterprise,'" we have required that the members of the association "'share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *First Capital*, 385 F.3d at 174).

Here, plaintiffs' allegations of the RICO defendants' common purpose fall short of supporting a plausible inference that an association-in-fact enterprise existed. Although the complaints allege that the goal of the purported association-in-fact enterprise was "to purchase the favor and influence of political leaders and government officials," Joint App'x at 37 (Compl. ¶ 26), this allegation is little more than a "'naked assertion' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration omitted). Notably absent from the complaints' narrative are any allegations that CNB benefited in any way from the alleged enterprise. Similarly, the complaints lack any "specific factual allegation[s] about the intent" of any RICO defendant other than Spiegelman or Williams. *Cruz*, 720 F.3d at 121. The complaints further fail to suggest why CNB or Spiegelman would share the goal of deriving political support for NBUF with Williams. Plaintiffs' failure to allege a plausible common purpose among the RICO defendants is fatal to their assertion that these defendants formed an association-in-fact RICO enterprise.

In their reply brief, plaintiffs suggest that their complaints establish a two-person association-in-fact enterprise comprising Spiegelman and Williams alone. We need give this

7

belated argument only brief consideration. First, plaintiffs had never before alleged the existence of this alternative enterprise, whether in their complaints or in their moving brief on appeal. "[W]e generally do not consider arguments that are raised for the first time in a reply brief," *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006), "because if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it," *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001). *See also United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003).

But even evaluating the substance of plaintiffs' argument and construing the pleadings liberally with regard to the enterprise element, plaintiffs' claim that Spiegelman and Williams alone constitute a RICO enterprise does not pass muster. Plaintiffs' complaint gives no basis for inferring that these two defendants in isolation formed "an ongoing organization, formal or informal," let alone a coherent "entity separate and apart" from the alleged fraudulent scheme. *Turkette*, 452 U.S. at 583. Moreover, the complaints fail to provide a plausible basis for inferring that Spiegelman and Williams acted "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." *United Food & Comm. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (emphasis in original). The complaints may adequately plead that Spiegelman and Williams worked together in some respects to steal plaintiffs' funds, but the complaints create no plausible inference that they did so to advance the political agenda of their purported "enterprise" or for any shared purpose. As the Seventh Circuit has observed, "RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute." *Id.* at 851. Accordingly, plaintiffs have failed sufficiently to plead the existence of an association-in-fact enterprise.

Because plaintiffs have not adequately pleaded a plausible nexus between the alleged thefts and NBUF, or the existence of an association-in-fact enterprise, plaintiffs have failed to state a claim for relief under § 1962(c) of the RICO statute. We therefore do not address whether plaintiffs have adequately pleaded the requisite predicate acts, an additional element necessary to a § 1962(c) claim. The failure to state a claim for a substantive RICO violation,

8

moreover, is fatal to plaintiffs' RICO conspiracy claim under § 1962(d). *See First Capital*, 385 F.3d at 182.

**B. *Denial of Leave to Amend***

Plaintiffs assert that the District Court erred by effectively denying them leave to amend after granting defendants' motion to dismiss. We review a district court's denial of a request for leave to amend for abuse of discretion. *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).

Although plaintiffs never filed a formal motion for leave to amend in the District Court, "the lack of a formal motion is not sufficient ground for a district court's dismissal without leave to amend, so long as the plaintiff has made its willingness to amend clear." *McLaughlin*, 962 F.2d at 195. Plaintiffs' willingness to amend does not entitle them, however, to such an opportunity. A denial is proper, for example, if amendment would be futile. *See, e.g.*, *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014). And "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013).

Here, in their opposition briefs filed in the District Court, plaintiffs suggested that, if given leave to amend their complaints, they would supplement their pleadings with allegations concerning the involvement of CNB in the purported scheme and the relationship between Williams and ICS. Plaintiffs' supplemental allegations against CNB do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the somewhat more colorable contentions regarding Williams and ICS still fail to cure the fatal deficiency in their complaints: the absence of allegations supporting the existence of a plausible nexus between the alleged thefts and NBUF, or of a plausible association-in-fact enterprise. As in their submissions on appeal, plaintiffs failed in the District Court to assert a nexus between the NBUF enterprise and the racketeering conduct alleged and failed to

9

allege a plausible common purpose among the members of the purported association-in-fact enterprise.

We note, in addition, that plaintiffs had ample opportunity to file a formal motion for leave to amend with the District Court. Defendants filed two motions to dismiss—one on March 22, 2013, and a second on August 2, 2013—and the District Court did not issue its opinion dismissing the case until March 11, 2014. Plaintiffs thus had ample notice of the asserted flaws in their complaints, and ample time formally to move for leave to amend and to proffer an amended pleading. Ultimately, plaintiffs made no "showing as to how [they] might amend their complaint[s] to cure their pleading deficiencies," even under the liberal pleading standards of Rule 8(a). *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999). In this context, we conclude that the District Court did not abuse its discretion in denying plaintiffs' request to file an amended pleading.

\*\*\*

We have considered plaintiffs' remaining arguments on appeal and find them to be without merit. For the reasons set out above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10